## COUNTY COURT—ONEIDA COUNTY,

### Oct., 1912

## THE PEOPLE v. JACOB KYSER.

(78 Misc. 68.)

COURTS OF SPECIAL SESSIONS—JURISDICTION—OFFENSE COMMITTED OVER COUNTY LINE.

Section 135 of the Code of Criminal Procedure applies only to actions prosecuted by indictment and does not confer jurisdiction on Courts of Special Sessions in the county of Oneida over crimes committed outside of the limits thereof.

A Court of Special Sessions in the county of Oneida has no jurisdiction to try a charge of illegal fishing in Oneida lake at a point which, under normal conditions, would be upon dry land in the county of Madison several rods over the county line of Oneida county.

DEFENDANT was convicted of violating the Conservation Law by fishing with the net in the waters of Oneida lake, upon a trial by a jury in a Court of Special Sessions of the town of Camden in this county, and appeals therefrom.

*Hitchcock & Murphy,* for appellant.

*W. R. Lee,* assistant district attorney, for respondent.

HAZARD, J.:

The most serious question raised by this appeal is that of the jurisdiction of the court. Defendant has been convicted upon evidence which, to my mind, is satisfying of his guilt; but it appears that the illegal fishing was done in Oneida lake at a point which, under normal conditions, would be upon dry land in the town of Lenox in the county of Madison. It is undoubtedly true that the greater portion, and all of the easterly end of

Oneida lake, is in Oneida county, and it is, therefore, the contention of the people that, inasmuch as the defendant was illegally fishing in Oneida lake, a Court of Special Sessions in Oneida county had jurisdiction to try him for the offense.

It appears that at the time in question, which was in the early spring, the conditions in Oneida lake were abnormal, that the water was several feet higher than ordinarily existed, with the result that, at the particular point where defendant is claimed to have been detected using a net, the water had backed up for several rods, and the fishing, if any, was done back of a clump of willows which ordinarily stood on dry land near the edge of Oneida lake, and the defendant contends that, if any fishing was done (which he denies), it was done in Madison county. Section 135 of the Code of Criminal Procedure cannot be invoked in this case, as it has been held to apply only to criminal actions prosecuted by indictment, and that it does not confer jurisdiction upon courts of Special Sessions of crimes committed outside the limits of their country. People v. Bates, 38 Hun, 180.

The northern boundary of Madison county is described, so far as we are concerned with it, as follows: " Thence westerly along the southern shore of Oneida lake to the Military Tract." 5 Birdseye, C. & G. Consol. Laws, 5696.

Inasmuch as a Court of Special Sessions in Oneida county had no jurisdiction whatever of a crime committed even a single foot over the boundary line of that county, it, therefore, becomes all important in this case to decide where the exact boundary is between Oneida and Madison counties at that particular point. It has been held in cases involving private property rights, that a boundary of a private owner upon a natural pond in which the tide ebbs and flows extends only to high water mark; and, if upon a fresh water pond, to low water mark. Wheeler v. Spinola, 54 N. Y. 384, 385; Yates v. Van DeBogert, 56 N. Y. 351; Halsey v. McCormick, 13 id. 296.

It was held in Champlain & St. Lawrence R. R. Co. v. Valentine, 19 Barb. 492, that proprietors on the borders of Lake Champlain must be deemed to be the owners to low water mark; and in Child v. Starr, 4 Hill, 376, a grant which is bound by the shore of a fresh water river conveys the land to the water's edge at low water. At an earlier stage in the same case (Starr v. Child, 20 Wend. 152), it was held that the word " shore," when applied to a fresh water river, means " bank."

If we may consider that these and many other similar cases involving property rights are decisive of the meaning of the word " shore," as contained in the statute defining the northern limit or boundary of Madison county, it is apparent that the shore of that lake is the edge of the water at low water mark. I find no case which holds that, as applied to fresh water, the shore may be deemed the high water mark. Probably, broadly speaking, using the word " shore " in its strict sense, it should be applied to a *strip of land* fronting upon the tide water, between high and low water marks. See 7 Words & Phrases, 6496, and cases cited.

If we might adopt that construction as applied to the present case, of course the shore of Oneida lake would be the high water mark; but I think such a construction would be a strained and unnatural one, really applicable only to land fronting on tide water, and I doubt exceedingly if it was the intention of the legislature to define the northern limits of the county of Madison to be that varying point which the water in the lake might attain in periods of high water.

It seems to me that a political boundary should be fairly permanently fixed, and I cannot believe that it was the intention of the legislature in bounding Madison county on the north by Oneida lake to give it a shifting boundary line, depending entirely upon how much water there might be at a given time in Oneida lake. Clearly, under the cases cited, the owners of property fronting upon the lake at that point own to low water mark,

and it appears beyond question that their farms are in the town of Lenox in the county of Madison. Under any normal conditions the fishing for which the defendant was convicted was done upon one of those farms.

The Century dictionary defines the word " shore " to be " the edge or margin of land," and I think for the purposes of the present case that should be considered as a proper definition applicable to this case, perhaps adding thereto the words, " under normal conditions," if, indeed, we may not assume that the boundary line is really the low water mark. If my conclusions are correct, it appears that the crime was committed by several rods within the county of Madison. It is true that defendant was, or at least claimed to be, fishing in Oneida lake, but the conditions were wholly abnormal—the water was very high, and I think that he must be held to have done the illegal act over the county line in Madison county. I cannot believe that this county line fluctuates with the rise and fall of the water in the lake. I will illustrate by a local geographical condition: The city of Utica is bounded northerly by the center of the Mohawk river. At various periods that river overflows its banks, often spreading out over the flat lands to a width of half a mile, and even more. By reason of the conformation of the land, the overflow is almost wholly to the north, but it does not seem to me that the limits of the city of Utica are in periods of high water moved over to the north a quarter of a mile to what is then the centre of the Mohawk river. To continue the illustration further: Assume the case of a person bathing in the vicinity of one of the brick yards, which stand in the towns of Marcy and Deerfield several rods north of the normal stream upon dry land, but which in case of a flood would be considered inside of the centre line of the flooded river. There is an ordinance of the city of Utica against bathing without suitable clothing, but it would seem preposterous to claim that a person, who had been bathing in the vicinity of one of those brick yards during

an overflow, could be tried by the local police court for violating that city ordinance. It seems clear to me that he would be bathing in either Deerfield or Marcy, and I think that the illustration proves that this defendant was fishing in the town of Lenox in the county of Madison.

I regret to have to discharge this defendant, but I am forced irresistibly to the conclusion that the court which tried him had no jurisdiction. The judgment of the court below, is therefore, reversed.

Judgment reversed.